MOORE, Judge.
This appeal arises from a judgment of the Montgomery Circuit Court (“the trial court”) reversing the decision of the Alabama State Personnel Board (“the Personnel Board”), which had affirmed the termination of the employment of Cheryl Hancock, an employee of the Coffee County Department of Human Resources (“the Coffee County DHR”). Hancock has filed a conditional cross-appeal.

Procedural Background

Brandon Hardin, the director of the Coffee County DHR, initially reprimanded Hancock in writing on October 11, 2007, for alleged insubordination. Hancock responded by sending a rebuttal letter to Hardin on October 18, 2007; that letter contained some remarks to which Hardin took offense. On October 22, 2007, Hancock made certain statements to representatives of a child-advocacy center that Hardin considered to reflect negatively on the Coffee County DHR’s administration. Based on those remarks and statements, Hardin issued to Hancock a letter dated November 9, 2007, charging Hancock with disruptive conduct and insubordination. Hancock initially requested a hearing on the charges, but subsequently, on the advice of counsel, she agreed to waive her hearing rights and to accept a 14-day suspension effective January 9, 2008.
On February 5, 2008, Hardin issued a letter to Hancock charging her with improperly disclosing confidential files and information of the Coffee County DHR to a third party, insubordination for having accused Hardin of conspiring to terminate Hancock’s employment, and making unauthorized personal telephone calls during work hours so as to be inattentive to her job. On April 10, 2008, Hardin issued another letter to Hancock charging her with abusing her sick-leave and compensatory-time privileges and using work and compensatory time to make excessive personal telephone calls. On August 7, 2008, Hardin issued a third letter to Hancock charging her with using abusive or threatening language, disruptive conduct, and insubordination for informing two coworkers that she could cause the termination of their employment. Hancock began serving a mandatory leave on August 12, 2008. Finally, on August 13, 2008, Hardin issued a fourth letter to Hancock charging her with having used further abusive or threatening language toward a coworker, disruptive conduct, and insubordination.
An independent hearing officer conducted disciplinary hearings regarding the aforementioned charges on April 30, September 29, and October 7, 2008. The hearing officer determined that the Coffee County DHR had presented sufficient evidence to warrant the termination of Hancock’s employment. Hardin issued a letter to Hancock, dated December 3, 2008, notifying her that her employment had been terminated based on the findings and recommendation of the hearing officer.
Hancock appealed to the Personnel Board on December 12, 2008. The Personnel Board appointed an administrative law judge to hear the appeal. The administrative law judge (“the ALJ”) conducted evidentiary hearings over four days in June and July 2009, during which 21 witnesses testified and the parties submitted thousands of pages of exhibits. On October 19, 2010, the ALJ issued a 41-page recommendation to the Personnel Board. The ALJ found that the evidence did not sustain the charges of disclosing confidential files and information, of making unauthorized personal telephone calls, and of being inattentive to the job, but that suffi- *1096 dent evidence did prove that Hancock had committed acts of insubordination and disruptive conduct so as to justify her dismissal. The ALJ also concluded that, although it appeared that Hancock had abused her sick-leave and compensatory-time privileges, it was unnecessary to decide that charge given the findings relating to her insubordination and disruptive conduct. The Personnel Board adopted the recommendation of the ALJ and issued its final order upholding Hancock’s dismissal on November 17, 2010.
On December 17, 2010, Hancock notified the Personnel Board that she would appeal its order. See Ala.Code 1975, § 41-22-20(b) & (d). On January 18, 2011, Hancock sought judicial review of the actions of the Personnel Board by filing a complaint with the trial court.[1] See § 41-22-20(d). On July 27, 2011, the trial court entered a judgment reversing the Personnel Board’s decision and remanding the case to the Personnel Board with instructions to reinstate Hancock to her employment. The Personnel Board appealed to this court; this court reversed the trial court’s judgment and remanded the case for the trial court to enter a judgment stating its reasons for reversing the Personnel Board’s decision. See Alabama State Pers. Bd. v. Hancock, 93 So.3d 143 (Ala.Civ.App.2012). The trial court entered a revised judgment on October 16, 2012, in accordance with this court’s mandate. The Personnel Board appealed from that judgment on October 26, 2012; however, because Hancock filed a post-judgment motion with the trial court on November 15, 2012, the appeal was held in abeyance pending a ruling on that motion. See Parker v. Parker, 946 So.2d 480, 485 (Ala.Civ.App.2006) (holding that a notice of appeal is held in abeyance pending the resolution of a timely filed postjudgment motion filed after the notice of appeal was filed). The trial court denied the post-judgment motion on February 7, 2013; Hancock filed a cross-appeal on March 21, 2013.[2]

The ALJ’s Findings

The ALJ recommended that Hancock be dismissed from her employment solely on the charges of insubordination and disruptive conduct. The ALJ found that, since Hardin had been appointed director of the Coffee County DHR in 2006, Hancock had consistently undertaken “to demean and degrade Hardin in a confrontational manner” and had “attempted to undermine his authority in the office with other employees and those that came in contact with [the Coffee County DHR].” The first instance of such conduct expressly mentioned by the ALJ occurred in early October 2007. Hardin testified before the ALJ that he had anticipated that he would need to fill the quality assurance (“QA”) position *1097 of a retiring employee in October 2007 and that Hancock had begun working with the retiring employee in order to potentially transition from her job as a social worker conducting child-abuse-and-neglect investigations into the QA position. However, at some point in September 2007, Hardin’s superiors informed him that the QA position could not be filled. According to Hardin, after he informed Hancock of that development, she came into his office on three different days questioning why he had made that decision and, on one occasion, had stated that she “was going to tell her daddy” on him. Hardin further testified that Hancock had also told him that he needed to stop disciplining one of her coworkers, Dawn Mayberry, and that he was going to be sorry for what he had done to Hancock.
On October 4, 2007, Hancock sent Hardin a letter in which she expressed disappointment with Hardin’s leadership, noted that many people in the community did not believe that the Coffee County DHR was performing its functions adequately, questioned why Hardin was mistreating her and rewarding another employee she considered to be substandard, and informed Hardin that he was harming her emotional and physical health by making her job unduly stressful. Hardin responded in writing on October 11, 2007, by officially reprimanding Hancock for what he characterized as her unprofessional tone and comments about him and her coworker, her unauthorized critique of his staffing decisions, her disruptive and factually unsupported accusations that the community looked negatively upon the Coffee County DHR, and her breach of confidentiality regarding personnel matters. Hardin ordered Hancock to report to him the factual basis of any complaints she had received about the Coffee County DHR and to submit to the Employee Assistance Program in order to improve her conduct and to obtain assistance with any emotional or physical health problems she was experiencing.
On October 18, 2007, Hancock sent Hardin a rebuttal letter in which she stated that Hardin had “badgered” her into agreeing to take the QA position only to wrongfully give it to another less-experienced employee, that she had not made any unprofessional comments when inquiring as to the reason for that decision, that Hardin was being unrealistic in asking her not to field complaints from the community, that she had not discussed personnel matters with anyone but Hardin, and that she had been reprimanded without foundation. In that letter, Hancock, “[without meaning any disrespect whatsoever to [Hardin] regarding his age or experience,” noted that Hardin had been less than nine years old when she had begun working for the Coffee County DHR. The ALJ found that the content of Hancock’s letters demonstrated Hancock’s unwillingness to submit to Hardin’s authority and her disregard for Hardin’s leadership and implied a discriminatory attitude toward Hardin based on his age and experience. The ALJ further found that Hancock’s remarks were disruptive, disrespectful, and insubordinate.
On October 22, 2007, an employee of the Pike County Child Advocacy Center asked Hancock whether the Coffee County DHR would open a new case. Hancock testified that she had simply informed the employee that she was unsure whether a new file could be opened because of the new rules that had been implemented by the Coffee County DHR that made it more difficult to open cases. Hardin testified, on the other hand, that Hancock had questioned whether the Coffee County DHR’s supervisors were making good decisions when deciding whether to open a case and that he had charged Hancock at the time with disre *1098 specting the supervisors’ judgments by expressing doubt that a case would be opened. The ALJ found that Hancock had made “inappropriate statements” regarding her superiors at that time.
Hardin issued a letter dated November 9, 2007, to Hancock charging her with disruptive conduct and insubordination based on the statements contained in her rebuttal letter and the statements made by Hancock during her meeting with the employee of the Pike County Child Advocacy Center. The parties scheduled a disciplinary hearing to take place on January 9, 2008, but, on the hearing date, Hancock informed the Coffee County DHR that she was waiving her right to contest the charges and the parties agreed that Hancock would be suspended for 14 days beginning January 10, 2008. In a letter dated January 9, 2008, Hardin advised Hancock that she would be provided a corrective-action plan to follow in order to improve her conduct and that a failure to comply with that plan could result in further disciplinary action, including termination of her employment.
The ALJ found that, on January 9, 2008, after agreeing to the suspension and receiving the “cautionary” letter, Hancock described, in a heated and angry tone, the events that had transpired that day to a former colleague. Susie Landrum, one of Hancock’s eoworkers and friends, overheard the conversation, which had taken place in a hallway at the Coffee County DHR offices. Landrum testified, credibly, according to the ALJ, that Hancock had accused Hardin of conspiring to terminate her employment.[3] Hardin testified that, after overhearing Landrum conveying Hancock’s statements to another employee, it was his understanding that Hancock had indicated that Hardin was friends with the hearing officer and that Hancock believed that Hardin and the hearing officer were conspiring to end her employment. Hardin testified that he was not friends with the hearing officer. On February 5, 2008, Hardin charged Hancock with insubordination as a result of her statements. The ALJ found that Hancock had “verbally undermine[d]” Hardin on that occasion.
As noted above, Hardin issued a series of other charges against Hancock on February 5 and April 10, 2008. On April 80, 2008, a hearing officer conducted a preliminary meeting with Hancock and representatives of the Coffee County DHR, primarily to resolve pending discovery disputes; at the end of that preliminary meeting, a full hearing on the merits was continued to a later date. Before a hearing on the merits could take place, Hancock attended a pool party with several coworkers over the Memorial Day weekend. While discussing the pending hearing, Hancock informed two of her coworkers, Jo Ruth English and Melissa Martin, that, although she believed she could save her job, it would cost them their jobs, that she could “throw them under the bus” and “have their jobs” if she wanted to do so, but that she would not take that course of action. Both English and Martin testified before the ALJ regarding those remarks, and both testified that they had been unsettled by Hancock’s statements.
Kellie Saunders, a supervisor with the Coffee County DHR, testified that statements made by Hancock often had upset Martin and that Martin had had a particularly strong reaction to the conversation that had taken place at the pool party over the Memorial Day weekend. According to Saunders, as a result of Hancock’s statements, she often had had to comfort Mar *1099 tin and to reassure her that her job was not in jeopardy. When Saunders reported to Hardin the statements made by Hancock at the pool party and the effect those statements had had on Martin’s and Saunders’s ability to work, Hardin issued a letter to Hancock dated August 7, 2008, in which he charged Hancock with use of abusive or threatening language, disruptive conduct, and insubordination. Saunders testified that Hancock had confronted Martin with the charge letter and had asked Martin to clarify that Hancock had not threatened her job. Martin reported to Saunders that the confrontation had caused Martin to have a panic attack and that she had felt nauseated for days thereafter. Although Hardin instructed Hancock to refrain from further discussing disciplinary matters with Martin, Hancock continued to contact or to try to contact Martin in such a manner that, according to the ALJ, “could be clearly interpreted as harassment and intimidation of Martin since Martin would be a witness.” Hardin issued another letter to Hancock dated August 13, 2008, again charging her with use of abusive or threatening language, disruptive conduct, and insubordination as a result of her continued conduct toward Martin.
The ALJ found that the above incidents “separately and severally” justified Hancock’s dismissal for insubordination and disruptive conduct. However, the ALJ found that the most egregious misconduct committed by Hancock had occurred when Hancock arranged for Doug Donaldson, the Chairman of the Board of Directors of the Coffee County DHR and with whom Hancock was engaging in a romantic relationship, to call a meeting of the Board of Directors of the Coffee County DHR (“the Board”) in order to summarily terminate Hardin’s employment. The ALJ concluded, based on the testimony of James Slaughter, the Deputy Commissioner of the Alabama Department of Human Resources (“the Alabama DHR”), that Hardin was a state merit-system employee whose employment could be terminated only by following certain internal procedures of the Alabama DHR. The ALJ concluded that Donaldson, based on his relationship with Hancock and armed with “apparent detailed knowledge” of Hancock’s conflicts with Hardin, had circumvented Alabama DHR’s procedures, of which Donaldson knew or should have known, by calling executive sessions of the Board to consider terminating Hardin’s employment. The ALJ further concluded that, rather than follow the proper procedure for filing a grievance against Hardin, Hancock had “used her relationship with Donaldson to bully and harass Hardin.”

The Trial Court’s Findings

On remand from this court, the trial court set out in detail its reasons for reversing the decision of the Personnel Board. The trial court took issue with the ALJ’s findings regarding Donaldson’s attempts to terminate Hardin’s employment. The trial court found that Hancock had not been charged by Hardin or discharged by him for any alleged misconduct relating to Donaldson’s attempts to terminate Hardin’s employment, that the record did not contain any evidence indicating that Hancock had used her relationship with Donaldson to provoke Donaldson’s actions, and that, by law, Hardin served at the pleasure of the Board and his employment could be terminated by the Board without observing state merit-system protocols, so Donaldson had acted within his authority.
The trial court concluded that “the overwhelming evidence reflects Hancock was fired for reasons other than merit.” The trial court found that Hardin had developed a conflict with Donaldson before he had ever disciplined Hancock. Hardin tes *1100 tified that Donaldson had begun to try to insinuate himself into the administration of the Coffee County DHR as early as August 2007 when Donaldson had requested to be involved in personnel interviews and had advised Hardin to, among other things, promote Hancock. At that time, Hardin had informed Donaldson that his involvement was inappropriate and that Hardin would arrange training for Donaldson as to his proper role. According to Hardin, Donaldson had responded that Hardin would be sorry for his comments and that Donaldson knew the local sheriff and would embarrass Hardin if Hardin did not follow Donaldson’s directives. Hardin testified that Donaldson and the other Board members received the referenced training on September 11, 2007. Sharon Ficquette, general counsel for the Alabama DHR, provided that training.
The trial court found that Donaldson had attempted to convene an executive session of the Board on November 6, 2007, to discuss a letter of complaint that he had received concerning Hardin. The evidence shows that attorneys representing Hancock and Mayberry sent a letter dated .October 23, 2007, to Donaldson requesting that the Board investigate Hancock’s claim that Hardin was discriminating against her because of her age and Mayberry’s allegation that Hardin was sexually harassing her and other female employees. The trial court found that, although Hardin was unaware of the nature of the complaint against him, he knew that the Board would be meeting to consider disciplinary action against him. The trial court also found that Ficquette had disrupted that meeting. The record reflects that, after Donaldson issued a November 1, 2007, memorandum calling for the executive session, Ficquette contacted Donaldson via telephone and sent Donaldson a November 6, 2007, letter explaining that Donaldson had failed to comply with the Alabama Open Meetings Act. See Ala.Code 1975, § 36-25A-1 et seq. Ficquette then appeared at the meeting to object to it taking place, which, Donaldson testified, led to the meeting being canceled.
The trial court found that Donaldson had made a second attempt to hold an executive session of the Board regarding possible disciplinary action against Hardin on December 6, 2007. The record indicates that, on November 29, 2007, Donaldson sent a letter, via facsimile, to Hardin stating that the Board would be meeting in executive session to discuss Hardin’s general reputation and character. The record indicates that the Board members met on that date but that Donaldson did not distribute the October 23, 2007, letter to the other Board members or discuss the allegations made against Hardin. Donaldson testified that Ficquette had appeared at that session and, like every other session, stopped it. No action was taken against Hardin by the Board after that session.
The trial court found that Hardin later learned of Hancock’s relationship with Donaldson as a result of a meeting with Donaldson’s ex-wife and daughter. Thereafter, according to the trial court, Hardin began to pursue the dismissal of Hancock and the removal of Donaldson from the Board based on a false accusation that Hancock had provided confidential information to Donaldson. The evidence in the record shows that Donaldson’s daughter contacted Hardin in mid-January 2008 after she had reviewed documents relating to her parents’ divorce. Among those documents was Donaldson’s deposition in which Donaldson testified that, in discussions with Hancock, “some employee issues have been brought up there. I think — I personally think it would be confidential .... ” Donaldson further testified that Hancock had brought him “DHR files.”. Donaldson’s daughter also re *1101 viewed telephone records showing voluminous calls being exchanged between Hancock and Donaldson. Donaldson’s ex-wife testified that, when she asked Donaldson why he talked so often with Hancock, Donaldson had replied that she was giving him confidential information about the Coffee County DHR. Donaldson’s ex-wife also testified that Donaldson had told her that Hancock had brought him “papers about DHR.” After Hardin met with Donaldson’s ex-wife and daughter around early February 2008 and received the aforementioned documents and information, Hardin asked for a full investigation and charged Hancock with disclosing confidential Coffee County DHR information. Hardin testified that, upon receiving the charge, Hancock stated that she had provided documents to Donaldson relating to a lawsuit that had been filed by multiple employees of the Coffee County DHR. Although the original hearing officer had sustained the charge against Hancock, the ALJ concluded that the charge had not been substantiated because the files that Hancock had taken to Donaldson were not confidential records of the Coffee County DHR, but private lawsuit records of employees of the Coffee County DHR, and that Hancock had taken the files to Donaldson without violating any express policy of the Coffee County DHR and only after the former director of the Coffee County DHR had informed the employees that the files could not be kept at the offices of the Coffee County DHR.
The trial court found that Ficquette, acting on Hardin’s behalf, had threatened Donaldson with criminal prosecution for receiving confidential files from Hancock unless he resigned from the Board. The evidence in the record reveals that, on February 5, 2008, Ficquette, Slaughter, Donaldson, and Joe Cassidy, Sr., the attorney for the Coffee County Commission, met at the county commission’s office in New Brockton. Slaughter testified that the Alabama DHR had arranged the meeting in order to induce Donaldson to resign. Slaughter testified that the Alabama DHR had wanted Donaldson to resign because he had previously exceeded his authority by becoming overly involved in the operations of the Coffee County DHR by trying to tell Hardin how to do his job and because Donaldson had, according to his deposition testimony from the divorce case, received confidential Coffee County DHR files. Cassidy testified that very early in the meeting Ficquette informed Donaldson that he had received confidential Coffee County DHR files and that he should resign from the Board because it violated the law for him to have those files. Cassidy further testified that Ficquette had stated that she would also consider criminal charges. After a short period of conversation, Donaldson then left the meeting.
The trial court found that, around the same time as the February 5, 2008, meeting, attorneys for the Alabama DHR issued “DHR subpoenas” to obtain personal cellular-telephone records of Hancock and Donaldson. The record reflects that, on February 19, 2008, Felicia Brooks, the attorney for the Alabama DHR who was assigned to Hancock’s ease, unilaterally issued subpoenas for Hancock’s and Donaldson’s private cellular-telephone records.[4]
*1102 The trial court found that DHR officials offered to “not fire Hancock in exchange for Donaldson’s resignation as County Board chairman.” On April 24, 2008, Page Walley, who was at the time the Commissioner of the Alabama DHR, met with Andrew Hornsby, a former Commissioner of the Alabama DHR who was, at the time, the Deputy Director of Finance and who was representing then Governor Bob Riley on the Board of Directors of the Alabama DHR. According to Hornsby, Commissioner Walley had asked Hornsby, who knew Donaldson, to contact Donaldson in advance of an upcoming April 30, 2008, pre-disciplinary hearing involving Hancock. Hornsby testified that he met with Fic-quette to receive more information about the case. He also testified that, between his meetings with Walley and Ficquette, he had received authorization to offer to settle all the pending matters by transferring Hancock to another county DHR office if Donaldson would agree to resign his position as Chairman of the Board. On April 25, 2008, Hornsby telephoned Donaldson. The transcript of Donaldson’s recording of that telephone conversation indicates that Hornsby, among other things, stated that “they would be willing to hold up on the firing [of Hancock] and transfer her elsewhere if you would step down as County chair.”
The trial court found that “DHR officials [had] threatened to embarrass Donaldson by publishing details of his divorce” if Donaldson did not resign. Later in the transcript of that telephone conversation Hornsby stated that “they have a lot of allegations that apparently they are going to bring out [at Hancock’s predisciplinary hearing] — involvements down there and everything.” Hornsby also said: “They said it’s a lot of allegations about improper involvements with people and your divorce comes up and everything else.” When Donaldson questioned what his divorce had to do with Hancock’s job, Hornsby responded: “[T]hey have a lot of information they are going to present [at the hearing] that could cause embarrassment and could cause [Hancock] embarrassment. It’s likely going to get in the newspaper and all that.” Hornsby told Donaldson that Commissioner Walley would prefer to settle the matter amicably. Hornsby later stated: “[T]hese matters are going to get in the papers and the press covers the meetings and things.... ” Although Hornsby did not expect the press to attend the hearing, Hornsby expressed his belief to Donaldson that “they will be involved in due time. They always are at DHR.” After Donaldson accused officials of the Alabama DHR of threatening him, Hornsby said: “I don’t know — I don’t know that — I just — they just said they hated to see a lot of embarrassing news stories about everything and going back to your divorce.”
The record indicates that Donaldson did not agree to resign his position following his telephone conversation with Hornsby. The trial court found that “DHR officials” published details about Donaldson’s divorce after Donaldson refused to resign his chairmanship. On April 30, 2008, at the start of Hancock’s preliminary hearing, Ficquette introduced into evidence Donaldson’s March 5, 2004, deposition, which was taken during his divorce proceedings. On September 29 and October 7, 2008, at the continuation of the predisciplinary hearing, the attorneys for the Coffee County DHR and Hancock both questioned multiple witnesses at length regarding the deposition excerpt in which Donaldson testified that he had discussed “confidential” matters with Hancock and that Hancock had delivered Coffee County DHR files to his office. *1103 During the September 29, 2008, hearing, Ficquette also introduced a copy of the amended divorce complaint that had been filed in the Coffee Circuit Court by Donaldson’s ex-wife on March 3, 2004, and asked Donaldson if the reason he had been questioned in his deposition about his interaction with Hancock was because his ex-wife had alleged in her amended complaint that Donaldson had participated in an adulterous affair with Hancock. Hancock, however, did not present any evidence indicating that any DHR official had publicized any information contained in Donaldson’s deposition or the amended complaint to the press or that the press had covered any part of Hancock’s predis-ciplinary hearing at the request of a DHR official. When repeatedly asked about such matters during the Personnel Board hearing, Donaldson could not point to any information about his divorce that had appeared in a newspaper article through the efforts of DHR’s officials.
The trial court also found that Ficquette had disrupted a third Board meeting in which Donaldson had “attempted to discuss concerns which could have resulted in Hardin’s firing.” The evidence indicates that, on August 12, 2008, Donaldson sent a memorandum to members of the Board to notify them of a special meeting scheduled for August 19, 2008, to discuss the character and reputation of Hardin. Donaldson issued a letter, via facsimile, dated August 18, 2008, to Hardin notifying him that the Board would be considering his dismissal at the scheduled August 19, 2008, meeting based on seven different charges that were apparently drafted by an attorney or attorneys for the Alabama State Employees’ Association. The Alabama DHR took the position that the meeting could not take place without violating the Open Meetings Act. Ficquette attended the scheduled meeting and informed the Board members that the Board was meeting illegally and urged the Board members to refrain from any action until its regularly scheduled meeting in September. Although Donaldson expressed his disagreement, he and the other Board members ultimately left and the meeting did not take place.
The trial court concluded that the actions taken by “DHR officials” against Hancock were arbitrary and capricious and were “taken for reasons other than merit.” The trial court also concluded that the Personnel Board had acted arbitrarily and capriciously by sanctioning Hancock for insubordination
“while giving a pass to manipulative behavior of Hardin and his attorney ... which enabled Hardin to block three meetings spanning over a period of ten months to consider his own misconduct (i.e., recklessly accusing the County Board chairman of receiving confidential DHR files, acting in concert to leverage the County Board chairman’s resignation, disrupting three county board meetings to prevent discussion of his own conduct, publishing a salacious pleading of the County Board chairman’s divorce for no reason other than to carry out a threat to embarrass).”
Because the trial court concluded that Hancock had been discharged for unlawful reasons, the trial court refused to address the charges of insubordination and disruptive conduct that had been made against Hancock “other than to note that they were protected speech and the grounds were otherwise without merit.”

Issues on Appeal

In its appeal, the Personnel Board asserts that the trial court usurped its fact-finding role by reweighing the evidence and entering new findings of fact that were either unsupported by the evidence, contrary to the factual findings of the ALJ who actually heard the testimony, or irrel *1104 evant to the core inquiry of whether Hancock had committed the actions charged. Furthermore, the Personnel Board argues that the trial court misapplied the law when it held that Hancock could not be terminated for exercising her freedom of speech.

Standard of Review

“This court reviews a trial court’s judgment regarding the decision of an administrative agency ‘without any presumption of its correctness, since [the trial] court was in no better position to review the [agency’s decision] than’ this court. State Health Planning & Res. Dev. Admin, v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App. 1985). Under the Alabama Administrative Procedure Act (‘AAPA’), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
“ ‘[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
“ ‘(1) In violation of constitutional or statutory provisions;
“ ‘(2) In excess of the statutory authority of the agency;
“ ‘(3) In violation of any pertinent agency rule;
“ ‘(4) Made upon unlawful procedure;
‘“(5) Affected by other error of law;
“ ‘(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
“‘(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.’
“ § 41-22-20(k), Ala.Code 1975.... In reviewing the decision of a state administrative agency, ‘[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.’ Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993).... Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). ‘This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.’ Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App. 1989).”
Colonial Mgmt. Grp., L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002) (emphasis omitted).

*1105
Discussion

We begin our analysis by agreeing with the' trial court’s finding that the ALJ erred by affirming Hancock’s dismissal on the ground that she had used her relationship with Donaldson to have him call meetings of the Board to consider terminating Hardin’s employment. Section 36-26-27(a), Ala.Code 1975, provides, in pertinent part, that “[a]n appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby, for reasons which shall be stated in writing, served on the affected employee.... ” (Emphasis added.) The reasons for dismissal must be expressed to the employee in terms “specific enough to apprise the employee of the allegations against him [or her].” Johnston v. State Pers. Bd. of Alabama, 447 So.2d 752, 756 (Ala.Civ.App.1983). In this case, Hardin notified Hancock that her employment was being terminated on multiple grounds, which he explained in fairly specific factual detail, but Hardin never asserted that Hancock was being dismissed for instigating adverse employment actions by Donaldson against Hardin, whether through her personal relationship with Donaldson or otherwise.
We reject any argument asserted by the Personnel Board that Hancock received adequate notice of the charge during her predisciplinary hearing in 2008. Section 36-26-27 plainly requires the appointing authority to deliver in writing to the employee all reasons for dismissal. In the letters issued by Hardin to Hancock throughout 2008, Hardin charged Hancock with various misconduct that he warned could result in her dismissal, but he did not actually dismiss Hancock until December 3, 2008, after the completion of the predisciplinary hearing. In the December 3, 2008 letter, which is the only writing that satisfies § 36-26-27, Hardin, well aware of the evidence presented at the predisciplinary hearing, informed Hancock that her employment had been terminated only for the conduct outlined in his previous charge letters. If Hardin had terminated Hancock’s employment for any additional reason, he did not present that, reason' to her in the December 3, 2008, dismissal letter.
“This court has held that, in reviewing an employee’s dismissal, the Personnel Board is only to determine if the reasons stated for the dismissal are sustained by the evidence presented at the hearing.” Alabama Alcoholic Beverage Control Bd. v. Malone, 495 So.2d 1137, 1138 (Ala.Civ.App.1986) (citing Hilyer v. Blackwell, 377 So.2d 1090 (Ala.Civ.App.1979)) (emphasis added). In this case, the Personnel Board could review the evidence only to determine if it supported the reasons for discharging Hancock asserted by Hardin in the December 3, 2008, letter. Because, in that letter, Hardin did not state that he had discharged Hancock due, even in part, to Donaldson’s actions against him, the Personnel Board did not have the authority to find that Hardin was warranted in discharging Hancock on that additional ground.[5] By adopting the findings of the ALJ to that effect, the Personnel Board acted beyond its statutory authority. See § 41-22-20(k)(2).
Nevertheless, the ALJ and, by adoption of the ALJ’s recommendation, the Personnel Board, found that the evi *1106 dence sustained the charges of insubordination and disruptive conduct for which Hardin actually had been discharged. The ALJ further found that each act of insubordination and disruptive conduct “separately and severally” warranted Hancock’s dismissal. We find no error in that regard.
The ALJ heard conflicting evidence as to whether Hancock had accused Hardin of conspiring against her in order to terminate her employment. The ALJ determined that a preponderance of the evidence indicated that Hancock had made that accusation. Based on the appropriate standard of review, see Health Care Auth. of Huntsville v. State Health Planning Agency, supra, that finding cannot be disturbed. The ALJ also found that sufficient evidence proved that Hancock had told Martin and English that she could “have their jobs” and that Hancock had violated Hardin’s directive to refrain from discussing her disciplinary matters with Martin, thereby disrupting the office. Our review of the evidence in the record discloses that those findings are not clearly erroneous. See § 41-22-20(k)(2).
Rule 670-x-19-.01(1)(b)2., Ala. Admin. Code (State Pers. Bd.), provides that employees of state agencies may be discharged for even one act of insubordination, which is defined as “[f]ailure to follow an order; disobedience; failure to submit to authority as shown by demeanor or words.... ” (Emphasis added.) Rule 670-x-19-.01(1)(a)7., Ala. Admin. Code (State Pers. Bd.), provides that “[disruptive conduct of any sort” can result in disciplinary actions in increasing severity, up to and including, termination of employment. The Personnel Board could have elected to impose a lesser punishment than termination of employment, see Alabama State Pers. Bd. v. Hardeman, 893 So.2d 1173 (Ala.Civ.App.2004), but we cannot conclude that the Personnel Board acted unreasonably, arbitrarily and capriciously, or clearly outside its discretion in ruling otherwise. See § 41-22-20(k)(7). Thus, we find no legal basis for the trial court’s conclusion that the charges against Hancock were “without merit.”
We also disagree with the trial court’s finding that Hancock merely engaged in “protected speech.” In Ex parte Smith, 683 So.2d 431 (Ala.1996), our supreme court held that a party aggrieved by an administrative determination affirming his or her dismissal may appeal to the appropriate circuit court for consideration of whether the dismissal violated constitutional provisions, see § 41-22-20(k)(1), including the First Amendment to the United States Constitution.
“In reviewing a claim that an employee has been terminated for exercising the right to free speech, an appellate court must make an independent examination of the whole record, in order to ensure that the judgment of an administrative review panel does not constitute a forbidden intrusion on the field of free expression. Bose Corp. v. Consumers Union, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958-59, 80 L.Ed.2d 502 (1984). This is a rule of Federal constitutional law, reflecting the conviction that judges must exercise independent review in order to preserve these liberties, and this rule is binding upon state appellate courts. Bose Corp., 466 U.S. at 510, 104 S.Ct. at 1964-65. Therefore, a circuit court, acting in an appellate capacity, would be required to make a de novo review of any First Amendment claims raised by the terminated employee. Thus, there is an appropriate procedure for an employee to follow in order to ensure that his or her constitutional claims are reviewed by a jurist possessing the requisite legal competence.”
*1107 683 So.2d at 436. In her complaint filed with the trial court, Hancock generally pleaded that the Personnel Board had acted in violation of constitutional provisions in affirming her dismissal.
Assuming, without deciding, that Hancock sufficiently raised the First Amendment issue in her complaint, the trial court had to determine “ ‘the threshold legal question of whether the employee’s speech may be “fairly characterized as constituting speech on a matter of public concern.” ’ ” Ford v. Jefferson Cnty., 904 So.2d 300, 307 (Ala.Civ.App.2004) (quoting Brochu v. City of Riviera Beach, 304 F.3d 1144, 1157 (11th Cir.2002), quoting in turn Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), quoting in turn Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Whether certain statements may be fairly characterized as speech constituting a matter of public concern ‘“involves an examination of the content, form, and context of the speech.’ ” Ford, 904 So.2d at 307 (quoting Brochu, 304 F.3d at 1157, citing in turn Rankin, 483 U.S. at 384-85. “Our Supreme Court has held that ‘[w]hether speech is protected is an issue of law, reviewable de novo on appeal.’ Roberts v. Joiner, 590 So.2d 195 (Ala.1991), cert. denied, 504 U.S. 956, 112 S.Ct. 2302, 119 L.Ed.2d 225 (1992).” Smith v. State Dep’t of Pub. Safety, 716 So.2d 693, 696 (Ala.Civ.App.1998).
In this case, Hardin discharged Hancock for (1) saying that Hardin was conspiring to terminate her employment, (2) saying that she could have English’s and Martin’s jobs, and (3) discussing the preceding statement with Martin after being instructed not to do so. Looking purely at the content of those statements, none of them concerned matters of public concern, which “generally include ‘any matter of political, social, or other concern to the community....’” Ford, 904 So.2d at 308 (quoting Connick, 461 U.S. at 146. Rather, all the statements centered on Hancock’s private concern of maintaining her employment and her personal welfare. The form and the context of the statements also indicate their private nature because they were all allegedly made by Hancock to coworkers or former coworkers following or preceding prediseiplinary hearings regarding Hancock’s particular employment. Speech by public employees may not be characterized as speech of public concern “ ‘when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public’s evaluation of the performance of governmental agencies.’ ” Long v. Water Works & Sewer Bd. of Gadsden, 487 So.2d 931, 934 (Ala.Civ.App.1986) (quoting McKinley v. City of Eloy, 705 F.2d 1110 (9th Cir.1983)). Hancock’s statements could not be construed as the speech of “a citizen upon matters of public concern,” Connick, 461 U.S. at 147, but could be considered only as the speech of an employee “upon matters of only personal interest.” Id. In such cases as the one at bar, the First Amendment does not abridge the “wide degree of deference ... given to the employer’s judgment and to the employer’s concerns about employee insubordination, discipline, and harmony among coworkers.” Long, 487 So.2d at 934. Thus, the trial court erred in concluding that Hancock had been dismissed wrongfully for engaging in “protected speech.”
Finally, we address the trial court’s finding that Hancock had been discharged for reasons other than merit. In proceedings before the Personnel Board, Hancock argued that Hardin was pursuing her dismissal solely to extort a resignation from Donaldson and not for a merit-based *1108 reason.[6] The ALJ did not expressly address Hancock’s contentions, but it did find that Hardin had sufficient grounds for terminating Hancock’s employment, thus at least impliedly rejecting Hancock’s position. Upon review, the trial court was charged, as we are, with determining whether some evidence sustains the findings of the Personnel Board, not with determining whether the weight of the evidence supports a different determination. See Colonial Mgmt. Group, L.P., supra. The trial court misapplied the standard of review by accepting Hancock’s version of the context surrounding her dismissal when the conflicting evidence in the case reasonably could have been resolved by the ALJ contrary to that version.
Although in April 2008 Hornsby telephoned Donaldson and stated that the Alabama DHR would transfer Hancock rather than pursue her dismissal if Donaldson resigned, that offer hardly constitutes indisputable evidence of an extortion conspiracy. The circumstances show that, at the time of the offer, the Alabama DHR had evidence indicating that Donaldson had exceeded his authority in his dealings with Hardin, see § 38-2-8 (vesting “[a]ll administrative and' executive duties and responsibilities” exclusively in county director, not county chair), and in calling successive meetings in violation of the Open Meetings Act regarding improper accusations made against Hardin.[7] Fic-quette had also reviewed Donaldson’s deposition testimony upon which she could have readily formed a good-faith belief that Donaldson had received confidential Coffee County DHR information and documents, possibly in violation of statutes carrying criminal penalties. The Alabama DHR thus had good reason to request Donaldson’s resignation.
Hornsby testified that, when he was commissioner, he had sometimes successfully defused personnel problems by transferring an employee from one county office to another. Hornsby recalled that he either suggested or agreed with Fic-quette and Walley on April 24, 2008, that he should ask Donaldson if he would resign if the Alabama DHR agreed not to terminate Hancock’s employment, but merely to transfer her to another office. The ALJ could have reasonably concluded that, in making the offer, Hornsby had not threatened that the Alabama DHR would publicize salacious details of Donaldson’s divorce, but had noted, as a further consideration for Donaldson, only that Donaldson’s relationship with Hancock would inevitably surface in the scheduled predisciplinary hearings, which would be newsworthy. At any rate, nothing in the evidence indicates that, before Horns-by, Ficquette, and Walley reached the decision to make the offer on April 24, 2008, Hardin had been pursuing Hancock’s dis *1109 missal solely as a pretext to coerce Donaldson into resigning.
Rather, the evidence shows that, after Hancock had agreed to a 14-day suspension on January 9, 2008, Hardin overheard that Hancock had accused him of conspiring against her. Days or weeks later, Hardin received an unsolicited telephone call from Donaldson’s daughter indicating that she had recently discovered information about Hancock from reviewing documents in her parents’ divorce files.[8] The evidence supports a finding that, after meeting with Donaldson’s ex-wife and daughter and reviewing the documents they supplied, Hardin formed a good-faith belief that Hancock had disclosed confidential information and files to Donaldson[9] and that she was talking with Donaldson excessively over the telephone during work hours. Hardin charged Hancock with those infractions on February 5, 2008, and scheduled a prediseiplinary hearing to investigate those charges even though the law does not require such a hearing. Hancock presented no evidence indicating that Hardin had fabricated those charges as a .method of extorting Donaldson’s resignation. Hancock also did not present any evidence indicating that Hardin had participated in any way in the decision by the Alabama DHR to contact Donaldson and request his resignation either in February or April 2008.
From that evidence, the ALJ reasonably could have determined that Hardin was pursuing the dismissal of Hancock solely for the reasons stated in the charge letters and not as a pretext to obtain a resignation from Donaldson, which the Alabama DHR was independently seeking. To reach a conclusion that Hardin had dismissed Hancock for reasons other than merit, the trial court either had to make certain findings of fact that were unsupported by any evidence in the record or to reweigh the evidence in the record to accept Hancock’s point of view. Section 41-22-20 does not authorize an appellate court to substitute its own findings of fact for those of the Personnel Board. Alabama Renal Stone Inst, Inc., 628 So.2d at 823. Thus, we conclude that the trial court committed reversible error in reaching its judgment.

The Cross-Appeal

Hancock filed a conditional cross-appeal in the event this court reversed the judgment of the trial court. In her cross-appeal, Hancock maintains that the trial court erred “because it allowed the Personnel Board to manipulate the judicial review process by withholding material portions of the administrative record from the reviewing courts,” allegedly in violation of § 41-22-20(g).
The record shows that Hancock appealed the Personnel Board’s determination on January 18, 2011. According to § 41-22-20(g), the Personnel Board generally had 30 days from the date of the receipt of the notice of appeal to transmit the entire administrative record to the trial court. However, the Personnel Board could obtain permission from the trial court to shorten the record of the proceedings under review by stipulation of the parties. On February 22, 2011, the Personnel Board moved for a stipulation on the record seeking to exclude “DHR Exhibit 16,” which contained the files Donaldson had *1110 obtained from Hancock. The trial court conducted hearings on the motion on March 9 and May 16, 2011. Thereafter, the parties exchanged correspondence and proposed stipulations, but did not reach an agreement. On July 22, 2011, the Personnel Board filed a motion requesting that the trial court rule on the February 22, 2011, motion. The trial court entered its judgment the next day reversing the Personnel Board’s decision without ruling on the stipulation motion. After this court remanded the case, Hancock moved the trial court, on August 16, 2012, to order the Personnel Board to file a complete administrative record, arguing that the Personnel Board had failed or refused to file 11 exhibits other than- “DHR Exhibit 16.” On August 22, 2012, the trial court denied the motion without explanation. The trial court subsequently revised its judgment to state its reasons for reversing the Personnel Board’s determination on October 16, 2012.
Hancock generally argues that this court cannot review the determination of the Personnel Board without the complete administrative record. However, Hancock specifically complains about only a limited number of missing exhibits. The first, Hancock’s Exhibit 3, is described as an audio recording made by Donaldson during his February 5, 2008, meeting with Ficquette, Slaughter, and Cassidy. Hancock maintains that, in the audio recording, Ficquette made a threat against Donaldson that proves that Hancock was dismissed without merit. However, Hancock questioned both Cassidy and Donaldson about the meeting and Ficquette’s alleged threat against Donaldson. Ficquette did not testify to dispute their recollection of the conversation. Thus, the ALJ was not asked to resolve any conflicts in the evidence as to the substance of that conversation, and the audio recording would have merely duplicated the testimony of the witnesses. Hence, Hancock has not shown that exclusion of the audio recording has prejudiced her substantial rights. See Rule 45, Ala. R.App. P.; and § 41-22-20.
Hancock also complains that the Personnel Board failed to transmit “DHR Exhibit 17,” an audio recording of an executive session of the Board, which appears to have taken place on December 6, 2007. Hancock asserts that the recording shows that Hardin became aware that Donaldson was pursuing disciplinary action against him and that Hardin, “aided and abetted” by Ficquette, immediately thereafter falsely accused Donaldson of receiving confidential files from Hancock. However, the record contains evidence indicating that, although Hardin did not know the exact nature of the complaints against him, Hardin was aware that Donaldson was attempting to take some adverse employment action against him as early as November 1, 2007, when Donaldson issued a memorandum calling for a Board meeting to take place on November 6, 2007. To the extent the audio recording would have been used to prove that Hardin had learnéd of Donaldson’s actions, the recording would only duplicate other evidence showing that Hardin actually knew of the matter a month earlier. The evidence also is undisputed that Ficquette did not accuse Donaldson of receiving confidential DHR files until February 5, 2008, two months later. Hence, Hancock has failed to show how exclusion of the audio recording has impaired her substantial rights. See Rule 45, Ala. R.App. P.; and § 41-22-20.
Hancock notes that the Personnel Board did not transmit her exhibits numbered 26 and 27. Exhibit 26 is an index to the lawsuit that produced the files Hancock delivered to Donaldson. That index would *1111 show only that Hancock did not disclose confidential files to Hardin, which the Personnel Board found and which finding is not attacked on appeal. Hancock does not describe the contents of Exhibit 27, but the record indicates that the exhibit consisted of records already marked as DHR Exhibit 8, reflecting photographs of items inventoried by an investigator who searched Hancock’s desk in January 2008. In both cases, the failure to include the missing exhibit does not impair Hancock’s substantial rights. See Rule 45, Ala. R.App. P.; and § 41-22-20.
The missing “DHR exhibits” include number 11, which the record reflects is a court order concerning the issuance of subpoenas by the Alabama DHR. Exhibit number 12 consists of a reprimand provided to Mayberry dated September 10, 2007. Exhibit number 13 is a document refreshing Donaldson’s recollection as to the date of his telephone conversation with Hornsby. Exhibit numbers 14 and 15 are e-mails concerning discovery exchanged between counsel. Exhibit number 16 consists of the lawsuit files that Hancock delivered to Donaldson, which were the subject of the Personnel Board’s stipulation motion. Exhibit number 18 contains several documents relating to medical leave Hancock took in 2007. Exhibit number 19 is a copy of an administrative regulation designating county directors as custodians of the records of their county department of human resources. Hancock has not explained how those omitted records adversely affected her appeal rights or hinder this court’s review. The foregoing descriptions show the missing documents generally do not relate to the substantive issues raised by the parties, and, in any case, the contents of most of them are adequately described in the record. As such, Hancock cannot articulate how their' omission has impaired her substantial rights. See Rule 45, Ala. R.App. P; and § 41-22-20.
We further note that Hancock did not raise the issue of the missing exhibits, other than DHR’s Exhibit number 16, to the trial court until August 2012, after the case had been remanded from this court back to the trial court, almost 18 months after she filed her petition for judicial review. That delay reinforces this court’s conclusion that the missing exhibits did not handicap Hancock’s ability to fully present her case to the trial court or to this court. Like this court, the trial court obviously was able to ascertain the exact nature of the evidence before the Personnel Board and determined that the record did not need to be supplemented to include the redundant or unnecessary exhibits. Although we disagree with the trial court’s factual conclusions, we do not do so based on a lack of understanding of the evidence due to an incomplete record.
Finally, Hancock notes that the Personnel Board did not provide this court transcripts of the hearings before the trial court. The record indicates that the trial court conducted hearings on several occasions, but the record does not indicate that the trial court conducted any evidentiary hearings. Generally speaking, upon judicial review of a decision of an administrative agency, the reviewing court is limited to the administrative record and may not make a new evidentiary record. See Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). A court must consider de novo the content, form, and context of speech claimed to be protected, see Roberts, supra, but nothing in the record or the briefs submitted to this court indicates that the trial court conducted an evidentiary hearing for that purpose. To the contrary, the revised judgment indicates that the trial court based its determination exclusively on its review of the *1112 administrative record. Because Hancock has failed to prove that the appellate record is missing a transcript of any additional evidence considered by the trial court, this case does not fall within the rule that we must presume that an omitted transcript supports the lower court’s findings. See, e.g., Smith v. Smith, 565 So.2d 72 (Ala.1990).

Conclusion

For the foregoing reasons, we reverse the judgment of the trial court insofar as it reversed the decision of the Personnel Board upholding the termination of Hancock’s employment based on her acts of insubordination and disruptive conduct. We affirm the judgment insofar as it reversed the Personnel Board’s decision upholding the termination of Hancock’s employment on the basis that Hancock instigated adverse employment actions by Donaldson against Hardin and insofar as it denied Hancock’s motion to require the Personnel Board to submit a complete administrative record. We remand the case to the trial court and direct it to affirm the decision of the Personnel Board insofar as it upheld the termination of Hancock’s employment based on her acts of insubordination and disruptive conduct.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL — AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. Pursuant to § 41-22-20(d), Hancock had 30 days, or until January 16, 2011, to file her petition for judicial review; however, because January 16 fell on a Sunday and the trial court was closed due to a legal holiday on January 17, see Rule 6(a), Ala. R. Civ. P., Hancock timely filed her petition on January 18, 2011. See Ala.Code 1975, § 1-1-4.

. Rule 4(a)(2), Ala. R.App. P., provides: “If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days (2 weeks) of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires.” Hancock did not file her cross-appeal within 14 days of the date the Personnel Board filed its notice of appeal, but she did file her cross-appeal within 42 days of the date the judgment became final, so her cross-appeal is timely. See HealthSouth Corp. v. Brookwood Health Servs., Inc., 814 So.2d 267 (Ala.Civ.App.2000) (construing Rule 4(a)(2) as providing that a cross-appeal must be filed within 14 days of a timely notice of appeal, or within 42 days after the trial court’s judgment becomes final, whichever is later).

. Hancock denied that she had made such a statement, and the former colleague testified that she, not Hancock, had actually used the word "conspiracy” during the conversation.

. Hancock filed an action seeking a judgment declaring that her personal cellular-telephone records had been obtained unlawfully through the issuance of a subpoena without statutory authority. After that action was dismissed, this court reversed the judgment of dismissal and remanded the case for resolution of that issue. See Hancock v. Buckner, 50 So.3d 1083 (Ala.Civ.App.2010). Because, in this case, the AU did not find any ground for disciplining Hancock due to her telephone usage, the ALJ did not reach the question whether the subpoenas had been unlawfully issued. Hancock *1102 has informed this court that the declaratory-judgment action remains pending.

. Because we conclude that the Personnel Board erred in upholding the dismissal on grounds not asserted in the December 3, 2008, notice-of-termination letter, we find no need to separately determine whether the Personnel Board committed legal error in finding that Hardin, as a county director, could not be discharged without following state merit-system procedures.

. In a separate action, Hancock sought to enjoin Hardin from discharging her on those same grounds, but this court held that the action had been properly dismissed based on the exhaustion-of-remedies doctrine. See Hancock v. Buckner, 50 So.3d at 1090.

. Evidence in the record supports the ALJ’s finding that Hancock and Mayberry did not formally file any complaints against Hardin in accordance with the procedures set out in their employee handbooks. Slaughter testified: "My employee, Ms. Wells, who supervises the county director, has not been made aware of any improper activity by Mr. Hardin. She has not seen and heard — in review of matters, has not told me that she has seen anything.” When asked if DHR had investigated the allegation, Slaughter stated: “No. It depends on what you call ‘investigation.’ I know that Ms. Wells reviewed the matter with Mr. Hardin and others, and there has not been any proper charges brought against Mr. Hardin. So, I would assume that our review of the matter did not warrant further investigation.”

. The trial court specifically found that Hardin did not even know of the relationship between Hancock and Donaldson until he was informed of it by Donaldson's daughter and ex-wife.

. At that time, Hardin could not have known that, years later, his charge would be proven false.